# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| STANTON L. CURBOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 07-3106-CV-S-JCE |
| ) | |
| NYLON NET CO., INC., ) | |
| a corporation, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is defendant's Daubert Motion to Exclude Expert Testimony of Kevin B. Sevart and the Suggestions in Support of that Motion. [Docs. # 63 and 64]. Plaintiff has filed Suggestions in Opposition to Defendant's Motion. [Doc. # 72]. On the issue of Mr. Sevart's testimony, there is also pending Defendant's Renewed Motion in Limine to Exclude Expert Testimony of Kevin B. Sevart, or, In the Alternative, Motion to Strike Additional Testing in Violation of the Court's Orders, and Suggestions in Support of the Motion. [Docs. # 48 and 49]. Plaintiff has filed Suggestions in Opposition to Defendant's Renewed Motion, [Doc. # 50], and defendant has filed Reply Suggestions to the Renewed Motion. [Doc. # 53].

Regarding defendant's Daubert motion, it is contended that the expert's testimony should be excluded, because plaintiff has failed to satisfy the requirements set forth in Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Pursuant to a teleconference conducted on August 28, 2008, the parties agreed that, based on the record before

1

the Court, a formal pretrial Daubert hearing may not be necessary.

Rule 702 permits a district court to admit the testimony of a witness whose knowledge, skill, training, experience, or education will assist a trier of fact to understand the evidence or determine a fact in issue, if the testimony is both relevant and reliable. Fed.R.Evid. 702; Daubert, 509 U.S. at 589-91. There is, however, no requirement that the district court always hold a Daubert hearing before qualifying an expert witness under Rule 702. See United States v. Eagle. 515 F.3d 794, 800 (8th Cir. 2008). In this case, the Court finds that a formal Daubert hearing is not necessary, and that this ruling will be entered on the state of the record before the Court.

This case involves plaintiff's claim that a golf practice frame and net designed by defendant is defective, and that defendant was negligent in designing, manufacturing, and furnishing the golf frame and net without any padding on the frame, and in failing to warn users of potential dangers. Plaintiff has identified Kevin B. Sevart as an expert witness to testify regarding his analysis of the golf frame and net. Mr. Sevart has opined that the golf frame and net was unreasonably dangerous because it failed to incorporate design alternatives and/or warnings, the golf frame and net was the cause of injuries sustained by plaintiff, he was a foreseeable consumer, the alleged dangers were foreseeable, and the alleged defects existed at the time the golf frame and net were manufactured.

Defendant asserts that "Sevart's own deposition testimony illustrates that his testing methodology and resulting opinions are not only completely unreliable but also totally irrelevant to this case." [Defendant's Suggestions in Support of Daubert Motion, at 4]. It is defendant's position that Sevart has never testified regarding sports-related equipment, has never designed

warnings for sports equipment, did not perform any testing on any golf frame and net in reaching his conclusions, and never attempted to reconstruct the product failure.

Defendant specifically asserts that Sevart's opinions fail to meet the Daubert standard for reliability because his proposed design alternatives with respect to the padding over the metal framework have not been adequately tested. Additionally, defendant asserts that plaintiff has not produced any evidence about side curtains or nets. Finally, it is defendant's position that Sevart's opinions regarding inadequate warnings fail to meet the Daubert standards because they have not been tested or submitted to peer review.

Plaintiff responds that Sevart did conduct testing, demonstrating that polyurethane padding over a pipe would result in a sufficiently low velocity of rebounding/ricocheting golf balls to prevent serious injury. Sevart stated that the scientific principle he applied relative to the testing is Conservation of Energy. "The ability of the golf ball to cause injury is based upon its kinetic energy (velocity)." Sevart Supplemental Report, page 1, Exhibit A. He testified that it is a basic scientific rule of physics that placing padding over a steel pipe would significantly reduce the velocity of a rebounding, ricocheting ball.

With respect to the padding over the metal framework, defendant submits that Sevart has never constructed a driving net incorporating such padding to test its utility or compatibility with the existing design. It is also asserted that the only testing performed by Sevart involved dropping golf balls onto the ground, a metal pipe, and metal pipe with ½ inch foam padding. He then observed how high the golf balls rebounded off of the various surfaces after dropping them from a height of 4 feet, and reached his conclusions after only 3 or 4 "valid" tests. [Sevart Deposition, at 142].

3

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Rule 702. When faced with a proffer of expert scientific testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. A district court should apply a three-part test when screening testimony under Rule 702. First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. E.g., Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion." Id. (internal quotations and citations omitted); Shuck v. CNH America, LLC, 498 F.3d 868, 874 (8th Cir. 2007). "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir.1997) (internal quotations and citation omitted). Plaintiff has the burden of establishing, by a preponderance of the evidence, that Mr. Sevart's testimony is admissible under Rule 702. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757-58 (8th Cir. 2006). This requires sufficient proof that the expert's testimony is the product of reliable principles and

4

methods, which were reliably applied to the facts of the case.

Having reviewed the record, the Court is satisfied, initially, that Mr. Sevart is qualified to testify regarding the alleged defective designs and failure to warn in this case. Although defendant complains that Mr. Sevart has never worked on a case involving sports-related equipment and has never designed warnings for sports equipment, the Court believes that based on his education, training, and knowledge as a Mechanical Engineer and Professional Engineer, he is qualified to testify as an expert in this case.

Once having found the expert qualified, the Court must screen for relevance and reliability. Daubert, 509 U.S. at 591-93. Among the numerous nonexclusive factors the Court can examine in its gatekeeping role are: 1) whether the expert's theory has been or can be tested; 2) whether it has been subjected to peer review and publication; 3) the potential rate of error; and 4) whether the theory has been generally accepted. Id. at 593-94. Additionally, the Court may examine other factors, such as: 1) whether the expertise was developed for litigation or flowed naturally from the expert's research; 2) whether the expert ruled out alternative explanations; and 3) whether the expert sufficiently connected the testimony with the facts of the case. Lauzon, 270 F.3d at 687.

According to Mr. Sevart's report, dated February 3, 2008, he "utilized the appropriate methodology for engineers in analyzing the safety of a design of any consumer product. Specifically, I reviewed the design and identified serious hazards. Once the hazards were identified I followed what is typically referred to as the design hierarchy. . . ." [Sevart's Report, at 2]. According to Mr. Sevart, this hierarchy includes eliminating hazards without unduly compromising the function of the product; providing physical protection or guards from the

5

remaining hazards; and providing warnings for avoiding hazards. Based on this analysis, he concluded that a significant hazard in this case is that of golf balls striking the exposed, rigid metal frame of the net, and rebounding/ricocheting and striking the user or bystanders. In reaching his opinions, Mr. Sevart indicated that he relied on his "knowledge of consumer product design, knowledge of the safety considerations for consumer products, knowledge of other designs to intended [sic] protect users/bystanders from recognized similar hazards, knowledge of mechanical design and human factors as it relates to the design of consumer products and design alternatives that would prevent accidents which result in severe injury such as that suffered by Mr. Curbow, as well as my understanding of this accident. . . ." [Report, at 2]. In concluding that there was an alternative design for the driving net in the form of padding over the metal framework to reduce the velocity of a ball striking the frame and rebounding/ricocheting; that there could have been side curtains/nets that would shield the vertical frame members and guide errant shots from the sides towards the middle of the net; and that appropriate warnings and instructions should have been provided, Mr. Sevart indicated that he relied on recognized design engineering, manufacturing, safety and human factor principles, as well as on his education, training, and experience.

Defendant asserts that Sevart's testimony is plainly inadequate to support the conclusions he reached; that he has never constructed a driving net incorporating padding to test its utility and compatibility with the existing design; that his proposed design alternative has not been subjected to peer review; and that his testing is not generally accepted. It is further argued that he has provided no basis for his opinions regarding inadequate warnings and for his remaining opinions regarding causation and foreseeability.

It is plaintiff's contention that Daubert does not require that an expert's opinion be supported by testing, exhaustive or otherwise, but that the subject of an expert's testimony must be scientific knowledge, and that it must be supported by appropriate validation. Plaintiff argues that Mr. Sevart's opinion is based on generally accepted scientific principles, coupled with known facts. Further, plaintiff asserts that Daubert's standards are intended to be flexible, and that the lack of peer review may be relevant, but not dispositive. It is also contended that Mr. Sevart's opinions with respect to the lack of warning by defendant are relevant and admissible because he is rendering an opinion based on the utter lack of warning or instructions with the product. Further, the other opinions rendered by Mr. Sevart regarding the lack of modification and foreseeability come from Mr. Sevart's prospective as a design engineer.

Having carefully reviewed the testimony, the positions of the parties, and the exhibits before it, the Court finds that Mr. Sevart's testimony as an expert should not be excluded in its entirety. It cannot be said in this case that Mr. Sevart's opinions are so fundamentally unsupported that they would offer no assistance to the jury. Wood, 112 F.3d at 309. A full review of the record indicates that the opinions he rendered, as reflected in his initial report, deposition testimony, and the first part of his supplemental report, are supported by the data he relied upon. The record supports a finding that Mr. Sevart relied upon basic principles of physics and design engineering, which he applied to the facts of this case. He also relied on specialized knowledge regarding design hierarchy, knowledge of consumer product design, knowledge of the safety considerations for consumer products, knowledge of mechanical design, and human factors. In keeping with the broad discretion accorded to the Court in fulfilling its gatekeeping function, the Court finds that Mr. Sevart's testimony should not be excluded in its

7

entirety. Upon review of the factors set forth in Daubert, this Court cannot say that the expert testimony of Mr. Sevart is so unreliable as to be inadmissible.  It should be noted, however, that defendant has  attacked the validity and reliability of Mr. Sevart's findings, in part because he did not construct a driving net incorporating padding to test its utility and compatibility with the existing design.  The ultimate weight to be given to his testimony will be a matter for the jury to decide.  For the reasons set forth herein, the Court finds that defendant's Daubert Motion to Exclude Expert Testimony of Kevin B. Sevart must be denied.

The matter of Mr. Sevart's testimony does not end, however, with the Daubert motion. Also pending before the Court is defendant's Renewed Motion in Limine to Exclude Expert Testimony of Kevin B. Sevart, or, In the Alternative, Motion to Strike Additional Testing in Violation of the Court's Orders.  Defendant objects to the supplemental report and the additional testing disclosed in that report.  It is contended that the supplemental report discloses additional testing above and beyond the testing that was disclosed in Sevart's original report or at his deposition, and that it was performed subsequent to the Court's order.  Defendant also objects to a DVD containing a video showing testing performed by Sevart that was not received within 30 days of the Court's order on supplementing the expert's testimony. Defendant requests that Sevart's testimony should be excluded in its entirety; or alternatively, that the Court should strike the relevant portions of his supplemental report disclosing testing he performed after the deposition, and the DVD of this testing.

In June of 2008, Mr. Sevart provided a supplemental report in which he more fully described the testing and calculations he performed in this case.  This was in response to the Court's order requiring plaintiff to supplement the record regarding the expert's testimony.  In

addition to delineating his testing in more detail, he also indicated that, after his deposition, he designed and fabricated a mechanism to fire high velocity golf balls at various configurations of padded and non-padded pipe, which was calibrated using a radar gun. This testing further confirmed his opinion that "1" foam padding would result in a sufficiently low velocity of a rebounding/ricocheting ball to prevent serious injury." [Sevart Report, June 2008, at 3]. He indicated, further, that he made a DVD of this testing.

Although the Court has found that Mr. Sevart's testimony should not be wholly excluded under the Daubert standard, after careful consideration, it will be ordered that Mr. Sevart's testimony regarding testing performed after his deposition in which he designed and fabricated a mechanism to fire high velocity golf balls at the various configurations of padded and non-padded pipe should be excluded. It is apparent that this testing was not disclosed in a timely fashion, that it is a different type of testing than was first disclosed, and that, contrary to plaintiff's argument, it is not rebuttal testimony. Wegener v. Johnson, 527 F.3d 687, 691 (8th Cir. 2008). The Court is of the opinion that the untimely disclosure of additional testing is neither substantially justified nor harmless, and that a continuance for further discovery would unduly postpone the trial date. Therefore, the Court will exercise its discretion under the circumstances of this case, and will grant defendant's Motion to Strike Additional Testing in Violation of the Court's Orders.

For the foregoing reasons, it is hereby

ORDERED that defendant's Daubert Motion to Exclude Expert Testimony of Kevin B. Sevart be, and it is hereby, denied. It is further

ORDERED that defendant's Renewed Motion in Limine to Exclude Expert Testimony of

9

Case 6:07-cv-03106-JCE   Document 79   Filed 09/05/08   Page 9 of 10

Kevin B. Sevart, or, In the Alternative, Motion to Strike Additional Testing in Violation of the Court's Orders, be, and it is hereby, granted in part. It is further

ORDERED that defendant's Alternative Motion to Strike Additional Testing in Violation of the Court's Orders be, and it is hereby, granted, and that Mr. Sevart's testimony regarding designing and fabricating a mechanism to fire high velocity golf balls at various configurations of padded and non-padded pipe, the DVD of this testing, and any conclusions reached be stricken.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 9/5/08